# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 13, 2023

Lyle W. Cayce
Clerk

_____

No. 22-30371

_____

CERTAIN UNDERWRITERS AT LLOYDS, LONDON

*Plaintiff—Appellant,*

*versus*

COX OPERATING,

*Defendant— Appellee.*

_____

Appeal from the United States District Court
For the Eastern District of Louisiana
USDC No. 2:20-CV-1177

_____

Before STEWART, DENNIS, and SOUTHWICK,* *Circuit Judges*.

PER CURIAM:

Certain Underwriters at Lloyds, London ("Lloyds") brought an intervenor complaint against Cox Operating LLC ("Cox") seeking to recover maintenance and cure benefits Lloyds paid to an injured seaman. Cox filed a motion for summary judgment, arguing that Lloyds bears responsibility for the payments under a protection and indemnity ("P & I") policy under which Cox is an assured. The district court agreed and granted

---

* JUDGE SOUTHWICK concurs in the judgment.

the motion. Lloyds timely appealed. Because the district court properly found that Lloyds is obligated to pay the maintenance and cure under the P & I policy, we AFFIRM.

## I. Factual and Procedural Background

This intervenor suit arises from an underlying case whereby an injured seaman, James Michael Jones, sued Cox and his employer, nonparty Select Oilfield Services, LLC ("Select"). Jones brought claims of negligence and unseaworthiness based on injuries he sustained while employed by Select on a lift boat, the M/V SELECT 102, that Select time chartered to Cox. Jones, who was the captain of the M/V SELECT 102, sustained serious head injuries when he slipped and fell on a fixed saltwater platform owned by Cox. Select provided Jones's services as part of a Master Services Agreement ("MSA"), under which Select agreed to supply Cox with equipment, goods, and services to aid in the production of natural gas and oil.

Pursuant to the MSA, Select agreed to provide Cox with the M/V SELECT 102 lift boat, as well as a captain and crew to assist with Cox's oil and gas production in the Eloi Bay Field in St. Bernard Parish, Louisiana.[1] As relevant to this intervenor suit, Select also agreed to defend and indemnify Cox for "all [l]osses of every kind and character arising out of bodily injury, illness, death, property damage of [Select], arising out of, in connection with, incident to or resulting directly or indirectly from this Agreement or the provision of any Services, Goods, or Equipment provided under" the MSA, regardless of fault. To cover these indemnity obligations, Select agreed to procure insurance policies that included Cox as an additional assured and

---

[1] On its website, Cox describes the Eloi Bay Field as being "[l]ocated in state waters of L[ousiana]." Cox, Eloi Bay, https://coxoperating.com/footprint/eloi-bay/ (last visited October 12, 2023).

22-30371

contained waivers of subrogation in Cox's favor. To that end, Select obtained a general liability policy with U.S. Specialty Insurance Company ("USSIC"), and, as relevant to this appeal, a maritime P & I policy with Lloyds.

The P & I policy provided coverage for "all such loss and/or damage and/or expense as the [a]ssured shall as owners of the vessel named herein have become liable to pay," including "hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel." Select had the ability to add additional assureds and release from liability "others for whom the [a]ssured is performing operations," and added Cox as an additional assured under the policy. Lloyds, in turn, agreed to "waive all rights of subrogation against any parties so released." However, Lloyds also limited this waiver of subrogation by including a provision stating that "no party shall be deemed an [a]dditional [a]ssured or favoured with a waiver of subrogation on any vessel insured hereunder which is not actually engaged or involved in the intended operations at the time of loss[.]"

After Lloyds paid maintenance and cure to Jones under the P & I policy, Lloyds filed an intervenor complaint seeking to recoup those costs from Cox as the party at fault for Jones's injuries. Cox filed a motion for summary judgment, arguing that Lloyds's intervenor complaint should be dismissed because Lloyds had waived its subrogation rights under the P & I policy. The district court granted summary judgment in favor of Cox, determining that "[b]ecause Cox was named as an additional insured under the P&I policy and because Select released Cox from liability for Jones's injury, Lloyds has no right to recover from Cox through subrogation." The district court rejected Lloyds's argument that the limitation clause in the waiver of subrogation provision applied, finding that the M/V SELECT 102 was in fact "involved in the intended operations of the parties at the time

22-30371

Jones was injured" since it was at the Eloi Bay Field to assist with Cox's operations, including the service platform, and "the M/V Select 102 was actually servicing the oil and gas production facility" on that day.

Lloyds now appeals the dismissal of its intervenor complaint, arguing that the district court erred in ruling in Cox's favor because the injury did not occur on the M/V SELECT 102 and thus was not covered by the P & I policy, or alternatively, falls within the clause limiting Lloyds's waiver of subrogation rights.

## II. Standard of Review

We review a district court's grant of summary judgment de novo. *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his court construes 'all facts and inferences in the light most favorable to the nonmoving party.'" *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012) (quoting *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010)). The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. SmithKline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990).

## III. Discussion

### A.    The P & I policy covers Jones's maintenance and cure

The parties dispute whether the maintenance and cure Lloyds paid to Jones was covered by the P & I policy because Jones's injury did not take place on the M/V SELECT 102. Though the district court found that it was "undisputed" that Jones's maintenance and cure fell within the P & I policy, Lloyds vigorously denied before the district court, and maintains on appeal,

22-30371

that Jones's maintenance and cure was not properly covered under the P & I policy.

Lloyds contends that the district court erred in finding Jones's injury to be covered under the P & I policy because the policy covered "only liabilities related to vessels that are scheduled under the policy" since the policy states that it provides coverage for "all such loss and/or damage and/or expense as the [a]ssured shall *as owners* of the vessel named herein have become liable to pay." The P & I policy includes coverage for claims asserted by Jones for "loss of life, injury, and illness," Lloyds's argument goes, and under Louisiana law[2] we must read this language in conjunction with the preceding paragraph that limits coverage to losses the assured acquires "as owner"[3] of the M/V SELECT 102. *Naquin*, 817 F.3d at 239 (under Louisiana law insurance contracts "must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole").

Lloyds cites *Naquin* for the proposition that where an "as owner" clause to a P & I policy remains intact, coverage under the P & I policy only extends so far as there is a "causal operational relation between the vessel

---

[2] Given that there is no federal maritime rule governing the issues of whether Jones's maintenance and cure benefits are covered by the P & I policy or whether the limitation to the subrogation waiver applies here, this court applies Louisiana law as the state with the most substantial interest in the application of its state's laws to the interpretation of the P & I policy. *Naquin v. Elevating Boats, L.L.C.*, 817 F.3d 235, 238 (5th Cir. 2016) ("In the absence of a specific and controlling federal maritime rule over this [marine insurance] dispute, we interpret this maritime insurance contract under Louisiana state law."). Select, the co-signatory of the P & I policy, is a Louisiana-based company, and the policy was executed to insure for risks associated with the provision of services on coastal waters of Louisiana, which is where Jones was injured.

[3] While the "as owner" clause was deemed deleted with respect to any additional assureds under the P & I policy, additional assureds are nonetheless "not entitled to a broader scope of coverage than would be the owner."

22-30371

and the resulting injury." *Id.* at 240 (quoting *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580, 584 (5th Cir. 1971)). Cox responds that *Naquin* is inapplicable because it only addressed liability coverage under a P & I policy, not an insurer's attempts to recoup maintenance and cure through subrogation. Indeed, *Naquin* involved a third-party complaint by a Jones Act employer against its insurers challenging the denial of liability coverage for a land-based incident. 817 F.3d at 237–8. There, the court determined that the P & I insurer properly denied liability coverage because the employer was not liable, as owner of the covered vessel, for the land–based incident that caused the seaman's injury. *Id.* at 240. Here, in contrast, Lloyds did not provide liability coverage under the P & I policy, and the issue instead is whether Jones became due maintenance and cure under the policy.

The court in *Naquin* relied on *Lanasse*, which called for "some causal operational connection between the vessel and the resulting injury" for the provision of maintenance and cure under a P & I policy to fall within a time charters' indemnity provision. 450 F.2d 580. Notably, the indemnity provision in the time charter in *Lanasse* only applied to damages "directly or indirectly connected with the possession, navigation, management, and operation of the vessel." *Id.* at 582 n.4.[4] Here, in contrast, the MSA's indemnity provision contained no such limitations, and explicitly applied to losses beyond the mere operation of the vessel to cover "all [l]osses of every kind and character arising out of bodily injury, illness, death, property damage" in connection with Select's services.

---

[4] Judge Brown also cautioned that had the suit, which was between parties to a time charter, been a subrogation action brought by an insurer a "serious question" would arise as to whether the action would be barred by the anti-subrogation rule, under which "an underwriter cannot recover by way of subrogation against its own assured" where the policy includes an "explicit policy provision waiving subrogation." *Id.* at 585.

22-30371

Select bore the obligation to pay maintenance and cure to Jones as a shipowner whose seaman was injured while "in service of the vessel." Select thus became liable to pay Jones maintenance and cure precisely as the "owner" of the M/V SELECT 102. *Bertram v. Freeport McMoran*, Inc., 35 F.3d 1008, 1013 (5th Cir. 1994) ("shipowner must pay maintenance and cure"); *Hernandez v. Bunge Corp.*, 01-1201 (La. App. 5 Cir. 4/10/02), 814 So. 2d 783, 791, *writ denied*, 2002-1551 (La. 9/30/02), 825 So. 2d 1193 ("Maintenance and cure is an obligation imposed upon a shipowner."); Thomas J. Schoenbaum, Admiralty and Maritime Law, § 6–28 (6th ed. 2022) (maintenance and cure is the "obligation of a shipowner who employs seamen to care for them if they are injured or become ill.").

Select's duty to provide Jones with maintenance and cure exists regardless of fault because Jones' injuries were sustained while he was in "service of his ship," and Select waived its right to recover any such costs from Cox under the indemnity provision of the MSA. *Warren v. United States*, 340 U.S. 523 (1951) (seaman entitled to maintenance and cure benefits when injured while on shore leave); *Noble Drilling Corp. v. Smith*, 412 F.2d 952, 958 (5th Cir. 1969) ("it would be unreasonable to say that a seaman working out from our shores in the Gulf of Mexico on a drilling platform, which his vessel has the function of servicing, is not also in the service of his ship"); *Cent. Gulf S. S. Corp. v. Sambula*, 405 F.2d 291, 296 (5th Cir. 1968) ("the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure"); *Bertram*, 35 F.3d at 1013 (maintenance and cure "in no sense is predicated on the fault or negligence of the shipowner"). Given that Select has no right to seek reimbursement of Jones's maintenance and cure from Cox, Lloyds as a subrogated insurer, can have no greater rights as to Cox than Select as the subrogor. *Travelers Ins. Co. v. Impastato*, 607 So. 2d 722, 724 (La. App. 4th Cir. 1992) ("Under Louisiana law, a subrogated insurer acquires no

22-30371

greater rights than those possessed by its subrogor and is subject to all limitations applicable to the original claim of the subrogor.").

Because Select was liable to pay Jones maintenance and cure as "owner" of the M/V SELECT 102, such benefits were covered by the P & I policy.

## B.    The limitation on Lloyds's waiver of subrogation does not apply

Having found that the P & I policy covered Jones's maintenance and cure, we next turn to the status of Lloyds's right to bring this subrogation action considering the waiver of subrogation rights provision[5] in the P & I policy.[6] The district court found that the M/V SELECT 102 was "engaged or involved in the intended operations" at the time of Jones's accident because "the M/V Select 102 and its crew were at the Eloi Bay Field to assist with Cox's operations there, including the service platform, and the M/V

---

[5] The "Blanket Additional Assureds and Waivers of Subrogation" provision in the P & I policy allowed Select to "name others for whom [Select] is performing work as [a]dditional [a]ssureds on this [p]olicy," release any additional assureds from liability, and required Lloyds to "waive all rights of subrogation against any parties so released [from liability by Select]." The provision also contained a limitation clause stating that "[n]otwithstanding the preceding provision, no party shall be deemed an [a]dditional [a]ssured or favoured with a waiver of subrogation on any vessel insured hereunder which is not actually engaged or involved in the intended operations at the time of loss[.]"

[6] The parties argue at length over whether Select's release of Cox in the MSA served to also waive Lloyds's subrogation rights as to Cox. Under Texas law, the law applicable to the MSA, "[s]ubrogation rights belong to the subrogated party and are waivable only by the insurer," so Select could not have waived Lloyds's subrogation rights through the MSA. *Halliburton Energy v. Ironshore Specialty Ins.*, 921 F.3d 522, 532 (5th Cir. 2019). Despite Select's agreement in the MSA to procure insurance that included a waiver of subrogation in Cox's favor, nowhere in the MSA does Select purport to waive subrogation rights on behalf of its insurer. Rather, Select agreed to support its indemnity obligations to Cox through an insurance policy in which Cox "is listed as an additional insured on and provided a written waiver of subrogation in [Cox's] favor."

22-30371

Select 102 was actually servicing the oil and gas production facility on" the day Jones was injured.

Lloyds argues that the district court erred in finding that the vessel was engaged in its "intended operations" at the time of the Jones's incident because the "P & I Policy makes waiver of subrogation coextensive with coverage." Yet, having found that Jones's maintenance and cure was covered by the P & I policy, the waiver of subrogation clause also covers Cox as an additional assured under the policy. Lloyds insists that the district court's reasoning ignored the plain meaning of the limitation restricting coverage and the waiver of subrogation to "vessel operations," yet nowhere does the policy explicitly limit either coverage or the waiver of subrogation to "vessel operations." Instead, coverage extends to "all such loss and/or damage and/or expense as the [a]ssured shall as owners of the vessel named herein have become liable to pay," including "hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel." The P & I policy limits the waiver of subrogation where a vessel is "not actually engaged or involved in the *intended* operations at the time of loss." The policy thus limits the waiver of subrogation only where the vessel is not engaged in operations intended by the parties to the MSA at the time of the loss. *Doerr v. Mobil Oil Corp.*, 774 So.2d 119, 124 (La. 2000) (when the words of the insurance contract "are unambiguous and the parties' intent is clear, the insurance contract will be enforced as written.") (citing La. Civ. Code Ann. art. 2046 (1985)).

The M/V SELECT 102 was involved in the operations intended by Select and Cox at the time of the incident—even if the vessel wasn't directly

22-30371

involved in the incident.[7] Under the MSA, Select and Cox agreed that the intended operations of the vessel included "all services, labor and work performed by [Select] for the benefit of [Cox] or pursuant to [the MSA] or otherwise performed in connection with or without any Goods or Equipment, including delivery thereof," and it is undisputed that the MSA generally required Select to "assist with Cox's operations in the Eloi Bay Field." At the time of Jones's injury, the M/V SELECT 102 was engaged in its "intended operations" in the Eloi Bay as defined under the MSA, and Jones was serving Cox in his capacity as captain of the vessel. Even if there were ambiguity as to the term "intended operations," as included in the limitation on the waiver of subrogation, any such ambiguity is to be resolved "in favor of coverage." *Bonin v. Westport Ins. Corp.*, 2005-0886 (La. 5/17/06), 930 So. 2d 906, 911 (citations omitted); *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So. 2d 759, 764 (La. 1994) ("ambiguous contractual provision is to be construed against the drafter, or, as originating in the insurance context, in favor of the insured.")

Because the M/V SELECT 102 was engaged in its "intended operations" at the time of Jones's injury and the limitation on the waiver of

---

[7] Lloyds filed a 28(j) letter, arguing that cases applying the "active control duty" theory to negligence claims against vessel owners somehow means that the M/V SELECT 102 was not "actually engaged or involved in the intended operations at the time of the loss" as understood under the P & I policy. Under the "active control" doctrine, vessel owners have a "a duty to exercise reasonable care to prevent injuries to longshoreman working in areas remaining under the 'active control of the vessel' or when the vessel owner 'actively involves' itself in the cargo operations[.]" *Fontenot v. United States*, 89 F. 3d 205, 206 (5th Cir. 1996); *see also Scindia Steam Navigation Co. v De Los Santos*, 451 U.S. 156, 164 (1981) ("vessel [owner] may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman[.]") While negligence claims are subject to the "active control duty," *Manson Gulf, L.L.C v. Mod. Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017) (noting that "the Supreme Court clarified in *Scindia* that vessel owner liability sounds only in negligence"), maintenance and cure is "in no sense [] predicated on the fault or negligence of the shipowner." *Bertram*, 35 F.3d at 1013 (internal citation removed).

22-30371

subrogation does not apply, Lloyds waived its subrogation rights as to Cox.[8]
The district court properly dismissed Lloyds's intervenor complaint.

## IV. Conclusion

For the reasons set forth, we AFFIRM the district court's dismissal
of Lloyds's intervenor complaint.

---

[8] Lloyds's claim is also barred by the anti–subrogation rule, under which "[a]n insurer cannot by way of subrogation recover against its insured *or an additional assured* any part of its payment for a risk covered by the policy." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 521 (5th Cir. 2019) (emphasis in original). It is undisputed that Cox was an additional assured under the P & I policy, and as discussed above, Jones's maintenance and cure was covered under the P & I policy. Lloyds attempts to evade the application of the anti-subrogation rule by pointing to cases that have found the rule to bar only subrogation suits that involved waivers of subrogation that did not contain the limitation contained in the P & I policy at issue here. However, the limitation on Lloyds's waiver of subrogation does not apply here because Jones's injuries arose while the vessel was engaged in the operations intended by the parties to the MSA.