No. 22-30371

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

James Michael Jones,
Plaintiff

v.

Certain Underwriters at Lloyds, London, subscribing to Cover Note (Unique Market Reference or UMR) B1262SM0446416, doing business as Osprey Underwriting Agency, Limited,

Intervenor Plaintiff - Appellant

v.
Cox Operating, L.L.C.,

Defendant - Appellee

On Appeal from

United States District Court for the Eastern District of Louisiana
2:20-CV-1177

PETITION FOR PANEL REHEARING

SUBMITTED BY:
Harry E. Morse
Martin S. Bohman
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

i

## TABLE OF CONTENTS

**Contents**……………………………………………………………………….**Pages**

Table of Contents ................................................................................................ ii

Table of Authorities ........................................................................................... iii

Issue Meriting Rehearing .....................................................................................1

Argument..............................................................................................................1

   1. This Court's holding is not consistent with the P&I policy language.................2

   2. This Court's opinion cannot be squared with *Naquin* .........................................3

   3. The insurance market has already identified the gap for Jones Act seamen off their vessel and there is insurance to cover that risk: an MEL policy.................5

Conclusion ...........................................................................................................8

Certificate of Service ..........................................................................................9

Certificate of Compliance ...................................................................................9

# TABLE OF AUTHORITIES

**Cases**……………………………………………………………………….**Pages**

*Badeaux v. Eymard Bros. Towing Co., Inc.*
    568 F.Supp.3d 645 (E.D. La. 2021) ...............................................................2

*Gryar v. Odeco*
    719 F.2d 112 (5th Cir. 1983) ..........................................................................4

*Naquin v. Elevating Boats, LLC*
    744 F.3d 927 (5th Cir. 2014) ..................................................................... 3-4

*Naquin v. Elevating Boats, LLC*
    817 F.3d 235 (5th Cir. 2016) ..................................................................... 1-4

*Noble Drilling Corp. v. Smith*
    412 F.2d 952 (5th Cir. 1969) ..........................................................................1

*Republic Ins. Co. v. City and County of San Francisco*
    1996 WL 655577 (N.D. Cal. Aug. 26, 1996) .................................................4

*Roberts v. Inland Salvage*
    C/A No. 14-1929 (E.D. La. Dec. 19, 2017) ....................................................5

*Sanchez v. Smart Fabricators of Texas, LLC*
    997 F.3d 564 (5th Cir. 2021) ..........................................................................4

*Warren v. United States*
    340 U.S. 523 (1951) .......................................................................................1

**Statutes and Treatises**……………………………………………………**Pages**

Libby, GE, *Some Aspects of Protection and Indemnity Insurance*,
    1952 Ins. L. J. 684 (1952)...............................................................................5

## Issue Meriting Rehearing

This Court has drawn a line between a P&I Policy's coverage for crewmembers' maintenance-and-cure liability, holding it is separate and apart from, and broader than, a P&I Policy's coverage for liability claims. That line is unsupported by the policy; unsupported by case law; and it will create significant challenges in the marine insurance industry for both underwriters and assureds. P&I Underwriters urge this Court not to draw that line.

## Argument

This Court's opinion draws a line in P&I policy coverage: distinguishing *Naquin v. Elevating Boats, LLC*, 817 F.3d 235 (5th Cir. 2016), this Court's opinion provides that a P&I Policy covers both Jones Act and third-party liability when the vessel is, in effect, the situs of, and causally involved in, the accident. When an incident occurs off a vessel, a different result follows. Then, the P&I policy is not implicated for liability purposes, but it is still responsible for maintenance and cure.

The case law establishes that a maritime employer owes maintenance and cure when a Jones Act seaman is injured off his vessel. *Warren v. United States*, 340 U.S. 523 (1951); *Noble Drilling Corp. v. Smith*, 412 F.2d 952, 958 (5th Cir. 1969). P&I Underwriters cannot, and would not, contest that. But there is no line in the P&I policy between liability exposure and maintenance-and-cure exposure, and this Court should not create such a line. First, it is contrary to the language and structure

of the policy; second it is contrary to settled case law; and third, there is already an insurance policy to cover this very risk: Maritime Employers' Liability coverage.

1. *This Court's holding is not consistent with the P&I policy language.*

The commonest P&I policy language is the SP-23 form. It provides that "[t]he Assurer hereby undertakes to make good to the Assured [. . .] all such loss and/or damage and/or expense as the Assured shall **as owners of the vessel named herein** become liable to pay and shall pay. ROA.1941 (emphasis added).

This is one of two provisions in the policy outlining the scope of coverage. Just before this language, the policy provides that the insurance applies "against the liabilities of the Assured as hereinafter described, and subject to the terms and conditions hereinafter set forth, **in respect of the vessel** called the [. . .]" ROA.1941 (emphasis added). See generally *Badeaux v. Eymard Bros. Towing Co., Inc.*, 568 F.Supp.3d 645, 657 (E.D. La. 2021). These limitations apply to the entire P&I policy.

The policy then provides what it covers. First, it covers "liability for loss of life of, or personal injury to, or illness of, any person." Second, it covers "liability for hospital, medical, or other expenses necessarily and reasonably incurred in respect of loss of life of, personal injury to, or illness of any member of the crew of the vessel named herein or any other person." ROA.1941. Crucially – and dispositive here – both these coverages are within the twin limitations stated at the outset of the

policy: the liability must be incurred as owner of the vessel, and in respect of the vessel. There is no dividing line such that liability payments are subject to one standard, and maintenance and cure is subject to another standard. There is no case before this one holding that maintenance-and-cure liability is different from tort liability under a P&I policy.

Furthermore, the policy's second provision (liability for medical payments) plainly contradicts any effort to establish that maintenance and cure are separate and apart, subject to a different standard: the policy covers liabilities for hospital and medical expenses not just for crewmembers, but for "any other person." ROA.1941. The P&I policy does not, under its plain language, provide broader coverage for maintenance and cure than for any other liability.

2. *This Court's opinion cannot be squared with Naquin.*

This Court's opinion further cannot be squared with *Naquin*, because Mr. Naquin was a Jones Act seaman and the *Naquin* court found the P&I policy did not provide coverage, full stop, with no division between maintenance and cure on the one hand, and Jones Act negligence on the other. Naquin filed suit and his Jones Act status was hotly contested. The district court held, and this Court affirmed, that he was, in fact, a Jones Act seaman. 817 F.3d at 237. EBI was held liable for Naquin's injuries under the Jones Act for failure to provide a safe place to work. *Naquin v.*

*Elevating Boats, LLC*, 744 F.3d 927; 932-38 (5th Cir. 2014).[1] EBI was liable under the Jones Act. In the same sense that this Court held Mr. Jones's maintenance and cure was incurred as owner of the vessel, EBI's exposure to Mr. Naquin was incurred as owner of the vessel: the Jones Act only applies to seamen who work on a vessel or fleet of vessels under common ownership or control,[2] but the *Naquin* court held that is not enough. The vessel had to be actually involved in the casualty. The P&I policy follows the vessel, not the crewmembers.

Mr. Naquin had not been paid maintenance and cure, even though he was owed maintenance and cure. He was paid under the LHWCA as his employer contested his Jones Act status. But in finding that Mr. Naquin was a Jones Act seaman but that the assured did not have coverage under the P&I policy, this Court made no distinction between maintenance and cure on the one hand, and liability on the other – nor should it have: the P&I policy language first covers liability for personal injury, then the second paragraph covers liability for hospital and medical expenses. Under the rule of orderliness, *Naquin* controls.[3]

---

[1] Mr. Naquin would not be a Jones Act seaman if the case were tried today because this Court reversed course in *Sanchez v. Smart Fabricators of Texas, LLC*, 997 F.3d 564 (5th Cir. 2021) (*en banc*).

[2] See generally *Sanchez*, outlining the scope and history of Jones Act status.

[3] See also *Gryar v. Odeco*, 719 F.2d 112 (5th Cir. 1983) (holding that acts of the vessel are a prerequisite for coverage under a P&I policy); *Republic Ins. Co. v. City and County of San Francisco*, 1996 WL 655577 (N.D. Cal. Aug. 26, 1996) (same); and the cases cited in P&I Underwriters' prior briefs to this Court.

3. *The insurance market has already identified the gap for Jones Act seamen off their vessel and there is insurance to cover that risk: an MEL policy.*

Protection & Indemnity policies are creatures of history: considered young in the marine insurance world, they are nonetheless more than a century old.[4] The gap identified by this Court is known to the insurance market – both buyers and sellers – and a specific, narrow policy is sold to cover it: Maritime Employers' Liability (MEL) policies. Unlike a P&I policy, an MEL policy is not limited to the vessel. See *Roberts v. Inland Salvage*, C/A No. 14-1929 (E.D. La. Dec. 19, 2017). The operative policy language in an MEL policy is this:

> We hereby agree, [. . .] to pay all sums which You become legally obligated to pay, as employer, for compensatory damages under 46 U.S.C. § 688 (the so-called "Jones Act") or the General Maritime Law of the United States, or for transportation, unearned wages, maintenance and cure and burial expenses, because of Bodily Injury by Accident or Bodily Injury by Disease, including wrongful death at any time resulting therefrom, sustained by any of your employees arising out of and in the course of their employment by You [. . .][5]

---

[4] See generally Libby, GE, *Some Aspects of Protection and Indemnity Insurance*, 1952 Ins. L. J. 684 (1952).

[5] See also *Gautreaux v. Tassin Int'l, Ltd.*, C/A No. 21-2987 (E.D. La.), Rec. Doc. 14-3, where an entire MEL policy is attached. The coverage language, at p. 4, provides:

> In consideration of the payment of the premium [. . .] We hereby agree [. . . ] to pay all sums which You become legally obligated to pay, as employer, for compensatory damages under 46 U.S.C. 688 (the so-called "jones Act") or the General Maritime Law of the United States, or for transportation, unearned wages, maintenance and cure and burial expenses, because of Bodily Injury by Accident [. . .]

Obvious from the language of the policy, the MEL policy, unlike the P&I policy, covers an employer's Jones Act exposure regardless of whether a vessel is involved or not. As a corollary, it only covers crewmembers – unlike the P&I policy, it does not cover the vessel. The MEL policy expressly refers to Jones Act coverage. The Jones Act applies to vessels, so usually, vessels are nearby, but in an MEL policy, unlike a P&I policy, vessel operations are not a prerequisite for coverage. Ordinarily, a careful assured will carry both a P&I policy to cover its vessel-related liability and an MEL policy to fill the gap for seamen who are injured off the vessel.[6]

This Court's opinion, left unaltered, would yield a peculiar result in insurance, with part of a claim covered and part of a claim uncovered for the same accident. If a non-employee (say a dockworker, not a Jones Act seaman) is hurt through vessel operations (say her leg is crushed between the vessel and the dock), then there is coverage under the P&I policy for the entire claim. If the same dockworker is hurt is hurt with no vessel operations (say she slips on the dock and alleges someone left soap on that dock), then there is no coverage under the P&I policy under *Naquin*, but there would be under a marine general liability policy. One accident to one person in one place is covered by one policy.

---

[6] Often, MEL cover will be provided by endorsement on a separate policy, including a P&I policy.

If a Jones Act employee is hurt through vessel operations (say again she gets pinched between the vessel and the dock), the vessel owner is covered under the P&I policy. If the Jones Act employee is hurt *not* through vessel operations (say again she slips on the dock), something odd happens. Per *Naquin*, the vessel owner is not covered under the P&I policy for tort liability. But per this Court's opinion, the vessel owner is covered for maintenance-and-cure exposure.

The less-than-careful vessel owner will not have an MEL policy and will have uninsured exposure for the tort claim. The careful vessel owner will have an MEL policy, and the MEL policy would cover the claim, along with a portion of the P&I poilcy. In all likelihood, there would be double coverage for maintenance and cure, and the MEL policy would cover the liability claim alone.

Even though the assured is covered in full for the claim, that claim is, at the real risk of understatement, a challenge. The insured pays two deductibles – one for each policy. There are three lawyers involved too: one for the assured, paid-for by one or both of the insurers. The P&I underwriter will want counsel, as will the MEL underwriter, because they only cover a portion of the claim and will want to ensure they do not overpay. Who pays the assured's lawyer is uncertain – a P&I policy covers law costs, but here it would be only law costs for the defense of maintenance and cure.

More significantly, the boundary between what the P&I and MEL underwriter owe is deeply and unresolvably uncertain. The P&I underwriter owes maintenance and cure, but so does the MEL underwriter, but only through maximum medical improvement. Then in judgment, the MEL underwriter owes medical expenses if the employer is found negligent – a Jones Act negligence claim includes past and future medicals, to the extent the employer is at fault. Any settlement will deal with difficult-to-resolve negotiations over which medicals fall under which policy and why. P&I Underwriters cannot here tell this Court how these issues will be resolved, except it will assuredly be through protracted litigation. At argument, this Court asked what decision would sow confusion in the marine insurance world. P&I Underwriters respectfully submit that there is very real risk of confusion from this Court's opinion, if it is unaltered.

The P&I policy was written and limited to liabilities incurred as owner of the vessel, and liabilities in respect of the vessel. That limitation applies to both liability for tort damages and for medical expenses. An MEL policy fills the gaps. From the perspective of both underwriters and assureds, it would be preferable for this Court to take the case *en banc* and reverse *Naquin*, holding that a P&I policy's coverage for Jones Act seamen is coextensive with the Jones Act employer's exposure under the Jones Act, as opposed to expanding P&I coverage in part. If the P&I cover were extended in full to cover all Jones Act exposure regardless of the whereabouts of the

vessel, underwriters and assureds could adjust premiums, and MEL policies may be eliminated altogether, but the result would have the salutary effect of having one policy cover one accident and avoid the confusion of partial double coverage.

4. *Conclusion*

Because the P&I policy does not draw a line between maintenance and cure liability on the one hand, and tort liability on the other, the natural conclusion is that P&I Underwriters' paid maintenance and cure that is not owed; P&I Underwriters' limitation in their policy is effective; and P&I Underwriters can recover from Cox for the maintenance and cure paid. But however this Court rules with regard to P&I Underwriters' right to recover the maintenance and cure paid to Mr. Jones, P&I Underwriters respectfully urge this Court not to expand P&I coverage past the limits written in the language of the policy. That policy language draws no line between tort liability and maintenance-and-cure exposure, and this Court should not create a line that is uncalled-for in the policy or in the case law, and may well prove unworkable in practice.

SUBMITTED BY:<br>
S/Harry E. Morse<br>
Harry E. Morse<br>
Martin S. Bohman<br>
Bohman Morse, L.L.C.<br>
400 Poydras Street<br>
New Orleans, LA 70130

# CERTIFICATE OF SERVICE

This is to certify that on October 26, 2023, the foregoing document was served, via the Court's CM/ECF Document Filing System, in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure upon all counsel of record, and has been transmitted to the Clerk of Court.

S/Harry E. Morse

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 2,785 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in Times New Roman 14.

S/Harry E. Morse